**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MED-TRANS CORPORATION,

Plaintiff,

v.

CAPITAL HEALTH PLAN, INC. and C2C INNOVATIVE SOLUTIONS, INC.

Defendants.

Civil Action No. 3:22-cv-01077-HES-JBT

**DEFENDANT C2C INNOVATIVE SOLUTIONS, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MOTION TO STRIKE DEMAND FOR ATTORNEY'S FEES**

Pursuant to Fed. R. Civ. P. 12(b)(1, 6), Defendant, C2C Innovative Solutions, Inc. ("C2C"), by and through its undersigned counsel, files this Motion to Dismiss Plaintiff's Complaint, based on arbitrator's immunity and lack of Article III standing. Additionally, C2C moves to strike Plaintiff's demand for attorney's fees, pursuant to Fed. R. Civ. P. 12(f).

## I. Background.

On January 1, 2022, the No Surprises Act, 26 U.S.C. § 9816, ("NSA") went into effect and created an independent dispute resolution process to adjudicate disputes between healthcare providers and healthcare insurers. Simply stated, when

the provider and insurer cannot agree on an amount for out-of-network services ("OON Services"), the dispute is submitted to an independent dispute resolution entity ("IDRE"). Through a limited process, the provider and insurers select or are assigned an IDRE through the efforts of the Department of Labor, Department of Health and Human Service, and the Department of the Treasury (the "Departments").

As required by Section 103 of the NSA, the IDRE receives submissions from both parties, and the IDRE considers certain factors but may not consider other factors. After the review of the factors, the IDRE then issues an award, selecting one of the party's proposed payment amounts. As plaintiff notes, if either party seeks to vacate the IDRE's award, the party must meet the standards found in the Federal Arbitration Act, 9 U.S.C. §10(a). *See* Compl. ¶ 35. For its work, an IDRE receives a minimal sum; for example, C2C received $349 to arbitrate this dispute.[1] *Id.* ¶ 18.

In this case, Defendant, Capital Health Plan, Inc. ("CHP") insured a patient who received OON Services from Plaintiff, specifically, air ambulance services from Tallahassee to Orlando.[2] *Id.* ¶ 3. When the parties could not agree on an amount to

---

[1] C2C assigns a specific arbitrator for each file and reviews each dispute as part of a process involving multiple members of an arbitration team. Thus, each order is not signed by an individual arbitrator but by C2C as the IDRE.
[2] As part of the NSA, the patient is not part of the dispute between the provider and the insurer.

be paid for Plaintiff's OON Services, the dispute was submitted to the Departments for arbitration. As the Plaintiff and CHP could not agree on an IDRE, the Departments assigned C2C to arbitrate, as one of the shrinking number of IDRE's willing to arbitrate matters. *Id.* ¶¶ 2, 5. C2C reviewed the parties' submissions and rendered its final arbitration award (the "Arbitration Award"), selecting CHP's proposed amount. *Id.* ¶¶ 5, 34.

As required by the NSA, Plaintiff filed this Complaint, seeking to vacate C2C's arbitration award under the FAA's strict guidelines for vacating arbitration awards. Plaintiff alleges that it has prevailed on a majority of disputes under the NSA but has lost every dispute where C2C was the IDRE. *Id.* ¶¶ 19, 20. Plaintiff also asserts that CHP's submissions were incorrect or based on faulty data. *Id*. ¶¶ 26 – 30.

Plaintiff further alleges that the Arbitration Award should be vacated due to the actions of the arbitrator, *i.e.*, C2C. Plaintiff claims C2C applied an improper presumption regarding the calculation and determination of the Arbitration Award. *Id*. ¶ 34. As part of the NSA, the Departments created a rule providing for a rebuttable presumption related to market analysis, but a federal district court in Texas struck that rule as improper. *Id.* ¶ 23. C2C asserts that it followed the current

state of the law and did not apply an improper presumption. However, that factual dispute is not relevant to this Motion to Dismiss as detailed below.[3]

Finally, Plaintiff seeks the following relief as to C2C: 1) a rehearing of the dispute between the parties; and 2) an order requiring C2C to follow the NSA's evolving rules and regulations, *i.e.,* an order requiring C2C to follow the law. *Id.* ¶ 43. Plaintiff also seeks attorney's fees without citation to statute or contract as a basis for the claim for attorney's fees. *Id.* ¶ 44.

## II. <u>Argument and Citation to Authority.</u>

Plaintiff's claims against C2C should be dismissed for two separate and independent reasons. First, C2C is entitled to arbitrator's immunity for its decision under the NSA. Second, even if there were no arbitrator immunity for C2C, there is no Article III case or controversy between C2C and Plaintiff, because C2C takes no position on rehearing the matter by C2C and because C2C is, of course, committed to following the law.[4] Additionally, the Court should strike Plaintiff's claims for attorney's fees as there is no basis for such a claim.

---

[3] Even if this dispute were material to the claims and the Motion to Dismiss, the Court would have to resolve any ambiguity about the arbitrator's decision in favor of the validity of the decision. *See Western Iowa Pork Co. v. National Brotherhood Packinghouse & Dairy Workers, Local No. 52*, 366 F.2d 275, 277 (8th Cir. 1966).

[4] Again, C2C does not admit that it did not follow the law, but C2C is willing to abide by an order requiring C2C to abide by the evolving rules and regulations, if such an order were appropriate, as discussed below.

    A. Standard for Motion to Dismiss.

In deciding a motion to dismiss for a failure to state a claim, a court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1084 (11th Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A court is not required to accept legal conclusions on a motion to dismiss. *New England Cleaning Services, Inc. v. Am. Arbitration Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999)(dismissing claim based or arbitral immunity); *Jason v. Am. Arbitration Ass'n, Inc.*, 62 Fed. Appx. 557 (5th Cir. 2003)(unpublished opinion)(dismissing case based on arbitral immunity for failure to state a claim).

A claim for lack of Article III standing implicates the court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). Such motions can be facial attacks, looking only at the allegations of the complaint, or factual attacks based on material outside of the four corners of the complaint. *Id*. at 1233 – 34.

B. C2C is Entitled to Arbitrator's Immunity.

In recognition of the rule of an arbitrator, federal common law has created arbitrator immunity to protect the judicial-like functions of an arbitrator.[5] *See Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1158 (10th Cir. 2007) (noting that every circuit that has considered arbitral immunity has recognized the doctrine); *New England Cleaning Services,* 199 F.3d at 545; *Honn v. National Ass'n of Securities Dealers, Inc.*, 182 F.3d 1014, 1017 (8th Cir.1999); *Hawkins v. National Ass'n of Securities Dealers Inc.*, 149 F.3d 330, 332 (5th Cir.1998); *Olson v. National Ass'n of Securities Dealers*, 85 F.3d 381, 382–83 (8th Cir.1996); *Corey v. New York Stock Exchange*, 691 F.2d 1205, 1208–11 (6th Cir.1982); *E. C. Ernst, Inc. v. Manhattan Const. Co. of Texas*, 551 F.2d 1026, 1033 (5th Cir. 1977); *Jason*, 62 Fed. Appx. 557; *Cahn v. Int'l Ladies' Garment Union*, 311 F.2d 113, 114–15 (3d Cir. 1962); *Hudnall v. Texas*, 2022 WL 3219423, *10 (W.D. Tex. Aug. 9, 2022); *Texas Brine Co., LLC v. Am. Arbitration Ass'n, Inc.*, 2018 WL 5773064, *2–3 (E.D. La. Nov. 2, 2018); *Singleton v. Pittsburgh Bd. of Educ.*, 2012 WL 4069560, *7 (W.D. Pa. Aug. 13, 2012) (recommending the dismissal with prejudice of the claim against an arbitrator).

---

[5] Florida statutorily provides an arbitrator with "judicial immunity in the same manner and to the same extent as a judge." Fla. Stat. § 44.107(1).

The rationale for arbitral immunity stems from sound policy considerations and the similarities of the role of an arbitrator and a judge. Decision-makers, such as arbitrators, should be free from bias or intimidation from a potential lawsuit by a disgruntled litigant. *See Pfannenstiel*, 477 F.3d at 1159 (*citing Butz v. Economou*, 438 U.S. 478, 508-511 (1978)); *New England Cleaning Serv.,* 199 F.3d at 545 (holding that arbitral immunity "is essential to protect decision-makers from undue influence and the process from reprisals by dissatisfied litigants."). "If [arbitrators'] decisions can thereafter be questioned in suits brought against them by either party, there is a real possibility that their decisions will be governed more by the fear of such suits than by their own unfettered judgment as to the merits of the matter they must decide." *Lundgren v. Freeman*, 307 F.2d 104, 117 (9th Cir. 1962).[6] The fear of a lawsuit is especially powerful here. First, there are a limited number of IDRE's willing to arbitrate these disputes. *See* Compl. ¶ 2. And further, the amount paid ($349) does not cover the risk of being dragged into federal litigation. *Id.* ¶ 18.

[6] Interestingly, Plaintiff has asked C2C to recuse itself from further cases involving Plaintiff, based on an alleged conflict due to the pending action. C2C is confident that no conflict exists under the applicable guidelines; however, by suing C2C and asking for a recusal, Plaintiff is (perhaps inadvertently) exerting pressure on C2C in future suits. Whether intentional or not, such pressure evidences the need for arbitral immunity.

With these policy decisions in mind, the courts have crafted a simple test to determine if the decision-maker is cloaked with immunity: does the plaintiff seek to challenge the "decisional act of an arbitrator?" If so, then immunity applies. *See Pfannenstiel*, 477 F.3d at 1159. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435-36 (1993) ("the 'touchstone' for the doctrine's applicability has been performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights."). Here, Plaintiff is unequivocally challenging the decision of C2C. *See* Compl. ¶ 20 (asserting that all of C2C's ruling have been adverse to Plaintiff), ¶ 34 (asserting that C2C applied the wrong standard). The alleged error is the heart of the Arbitration Award and the "decisional act" of C2C, and as such, arbitral immunity must apply to C2C.

Finally, based on conversations between counsel, C2C believes that Plaintiff will attempt to draw distinctions between the NSA's process and "traditional" arbitration as the basis for not applying arbitral immunity. Plaintiff has indicated arbitral immunity is not justified because of the inability to select the arbitrator, the lack of discovery, the lack of a reasoned award, the lack of a hearing, the lack of the ability to respond, and the involuntary nature of the statutorily compelled arbitration. *See* Compl. ¶ 18.

However, these differences do not justify allowing Plaintiff to sue the arbitrator in federal court based on C2C's Arbitration Award. In fact, Plaintiff's

arguments are misplaced. Although these reasons might support a claim for a violation of due process against the Departments, they do not justify a suit against C2C for acting as an arbitrator in a statutory scheme created by Congress. *See* Compl. ¶ 18 (describing the process as a "black box").

Further, other federal statutes provide for mandatory, binding arbitration of disputes. *See Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 785 (6th Cir. 2012) (describing mandatory arbitration of disputes under Railway Labor Act). Research revealed no cases under the Railway Labor Act naming the arbitrator as a defendant. Indeed, the only "proper parties" to such a suit are the affected individual and the carrier. *Stephenson v. New Orleans & N. E. R. Co.*, 180 Miss. 147, 177 So. 509, 518 (1937); *see also* Maureen A. Weston, *Reexamining Arbitral Immunity in an Age of Mandatory and Professional Arbitration*, 450 Minn. Law Rev. 449, 494 n.210 (2004) (suggesting arbitral immunity is most appropriate in industries regulated by federal law or with oversight of a federal regulatory agency).

Accordingly, Plaintiff's claims against C2C must be dismissed with prejudice, because federal common law provides C2C with immunity from Plaintiff's attack on its Arbitration Award.

C. <u>There is No Case or Controversy Between the Parties.</u>

As required by all federal court actions, there must be an actual case or controversy between the parties to confer Article III standing. And the necessary

"adverseness" between Plaintiff and C2C is missing here.[7] To have a case or controversy requires "the existence of present or possible adverse parties, whose contentions are submitted to the court for adjudication." *Nat'l Labor Relations Bd. v. Constellium Rolled Products Ravenswood, LLC*, 43 F.4th 395, 399–400 (4th Cir. 2022) (*quoting Muskrat v. United States*, 219 U.S. 346, 357, 31 S.Ct. 250, 55 L.Ed. 246 (1911)); *see also* Maureen A. Weston, *Reexamining Arbitral Immunity in an Age of Mandatory and Professional Arbitration*, 450 Minn. Law Rev. 449, 506 n. 248 (2004) (suggesting that where a party has challenged the merits of an adjudicatory decision, the arbitrator is not the real party in interest).

C2C is not adverse to Plaintiff (or CHP for that matter). C2C has no stake in the outcome of the litigation as reflected in the relief sought against it. If the award is vacated and remanded to C2C, C2C will arbitrate the matter a second time. Further, C2C will follow the evolving law, including the Texas case striking the presumption, regardless of whether the Court enters an injunction requiring C2C to do so or not. And an injunction requiring C2C to follow the law is improper. "[A]ppellate courts will not countenance injunctions that merely require someone to obey the law." *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1531 (11th Cir. 1996) (internal quotation marks and citation omitted); *see also SEC. v. Sky Way*

[7] C2C respectfully submits that there is a case or controversy between Plaintiff and CHP, the actual adverse parties.

*Glob., LLC*, 710 F. Supp. 2d 1274, 1279 (M.D. Fla. 2010) ("[A]n obey-the-law injunction unacceptably conflicts with a defendant's constitutional rights.").

Finally, suggesting that C2C is adverse to Plaintiff is antithetical to C2C's role as a neutral arbitrator. Much like a district court does not "defend" its order on appeal, C2C takes no position in this dispute between Plaintiff and CHP. In fact, C2C would exceed the scope of its arbitral power by vacating, reconsidering, or even defending the Arbitration Award. An arbitrator has no power or authority concerning its award after the issuance of a final award. *Int'l Bhd. of Elec. Workers, Local Union 824 v. Verizon Florida, LLC*, 803 F.3d 1241, 1245 (11th Cir. 2015) (describing the common law rule of *functus officio* (meaning task performed) which provides that an arbitrator has no power to revisit an issued award); *Citizens Bldg. of W. Palm Beach v. W. Union Tel. Co.*, 120 F.2d 982, 984 (5th Cir. 1941). As C2C has issued a final award and "performed its task," C2C's authority and power related to the Arbitration Award are at an end. Thus, C2C not only takes no position regarding the Arbitration Award, but under the rule of *functus officio*, C2C cannot take a position.

Accordingly, C2C is not (and cannot be) adverse to Plaintiff, and there is no case or controversy.

D. Plaintiff is Not Entitled to Attorney's Fees.

Under federal common law, a party is to bear its own attorney's fees, absent a statute or contractual provision to the contrary. *Misener Marine Const., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 840 (11th Cir. 2010). Here, no statute or contract provides for prevailing party attorney's fees, and Plaintiff's claim for attorney's fees should be stricken.

E. Local Rule 3.01(g) certification.

Pursuant to Local Rule 3.01(g), the undersigned has conferred with counsel for Plaintiff who does not consent to any of the relief requested in this motion.

## III. Conclusion.

For all the foregoing reasons, C2C respectfully request that the Court dismiss the case as to C2C and, alternatively, strike the claim for attorney's fees.

MILAM HOWARD NICANDRI
& GILLAM, P.A.

By: *s/ Michael T. Fackler*
Michael T. Fackler
Florida Bar No. 612421
Pierce N. Giboney
Florida Bar No. 124704
14 East Bay Street
Jacksonville, Florida 32202
Tel: (904) 357-3660
Fax: (904) 357-3661
Primary: mfackler@milamhoward.com
Primary: pgiboney@milamhoward.com
Secondary: sjames@milamhoward.com
Secondary: hdurham@milamhoward.com

*Counsel for Defendant, C2C Innovative Solutions, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 18th day of November, 2022, a copy of the foregoing has been electronically filed with the Clerk of the U.S. District Court, Middle District of Florida, via CM/ECF, and copies electronically delivered to the following:

Lanny Russell, Esq.
Smith Hulsey & Busey
One Independent Drive, Suite 3300
Jacksonville, FL 32202
lrussell@smithhulsey.com
*Co-Counsel for Plaintiff*

Adam T. Schramek, Esq.
Norton Rose Fulbright US LLP
98 San Jacinto Blvd., Suite 1100
Austin, TX 78701-4255
adam.schramek@nortonrosefulbright.com
*Co-Counsel for Plaintiff Med-Trans Corporation*

Abraham Chang, Esq.
Norton Rose Fulbright US LLP
1301 McKinney, Suite 5100
Houston, TX  77010-3095
Abraham.chang@nortonrosefulbright.com
*Co-Counsel for Plaintiff Med-Trans Corporation*

Steven D. Lehner, Esq.
Ruel W. Smith, Esq.
Hinshaw & Culbertson LLP
100 South Ashley Dr., Suite 500
Tampa, FL  33602
slehner@hinshawlaw.com
rsmith@hinshawlaw.com
TAMDocket@hinshawlaw.com
mmatthews@hinshawlaw.com
hbrown@hinshawlaw.com
smcmillan@hinshawlaw.com
*Counsel for Defendant Capital Health Plan, Inc.*

                                         *s/   Michael T. Fackler*
                                                 Attorney