UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MED-TRANS CORPORATION,

        Plaintiff,

                                Case No.. 3:22-cv-1077-HES-JBT

vs.

CAPITAL HEALTH PLAN, INC. and
C2C INNOVATIVE SOLUTIONS, INC.,

        Defendant

_____/

## DEFENDANT CAPITAL HEALTH PLAN, INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND JOINDER IN C2C'S MOTION TO STRIKE PLAINTIFF'S DEMAND FOR ATTORNEYS' FEES AND INCORPORATED MEMORANDUM OF LAW

Defendant CAPITAL HEALTH PLAN, INC. ("CHP"), by and through the undersigned counsel, seeks the entry of an order dismissing Plaintiff MED-TRANS CORPORATION's ("Med-Trans") Complaint, because it fails to comply with the Federal Arbitration Act's requirement for judicial review of an arbitration award, fails to specify any basis for vacatur or an arbitration award with specificity, and fails to support same with any record evidence despite Plaintiff's immediate burden to do so. Additionally, CHP joins in Codefendant C2C Innovative Solutions, Inc.'s ("C2C") Motion To Strike Plaintiff's Demand for Attorney's Fees pursuant to Fed. R. Civ. P. 12(f). In further support of its position, CHP states as follows:

## FACTUAL AND PROCEDURAL BACKGROUND

1.    For forty-plus years, Defendant CAPITAL HEALTH PLAN, INC. ("CHP") has provided comprehensive and affordable health care to its members,

employees of the State of Florida and their family members in the areas of Calhoun, Franklin, Gadsden, Jefferson, Leon, Liberty, and Wakulla counties in Florida.

2.      The No Surprises Act, 26 U.S.C. § 9816, ("NSA") was signed into law December 27, 2020 and went into effect for most consumers on January 1, 2022.

3.      Among other provisions, the NSA created an Independent Dispute Resolution ("IDR") procedure wherein disputes which arise between healthcare plans (such as CHP) and out-of-network providers (like Med-Trans) federally contracted IDR Entities ("IDRE") such as C2C.

4.      To briefly sum up the process, the IDRE receives submitted offers from both the health plan and the out-of-network provider. As C2C explains in its own Motion to Dismiss:

> [t]he IDRE considers certain factors but may not consider other factors. After the review of the factors, the IDRE then issues an award, selecting one of the party's proposed payment amounts. As plaintiff notes, if either party seeks to vacate the IDRE's award, the party must meet the standards found in the Federal Arbitration Act, 9 U.S.C. §10(a). For its work, an IDRE receives a minimal sum; for example, C2C received $349 to arbitrate this dispute.

Dkt. No. 24 (internal citations admitted).

5.      In this case, CHP insured a patient who was transported by Med-Trans from Tallahassee to Orlando. Dkt. 1 at ¶ 3. Med-Trans disputed the amount CHP paid in response to Med-Trans's billed charges for the transport.

7.      When the parties could not reach agreement through the NSA's Open Negotiation Period, and could not agree on which IDRE to which they would submit

the dispute, C2C was assigned by the federal agencies responsible for the NSA's implementation.

6.      C2C ultimately reviewed the parties' submissions and rendered its final arbitration award (the "Arbitration Award") on August 27, 2022, selecting CHP's proposed amount in accordance with the NSA's requirement that the IDRE select one of the two offers (in a manner commonly known as "baseball arbitration"). A copy of the Arbitration Award is attached hereto as **_Exhibit 1_**[1]. This action followed.

7.      Med-Trans is a subsidiary of Global Medical Response, Inc. ("GMR"), a family of air ambulance companies, as shown on GMR's webpage: https://www.globalmedicalresponse.com/home

8.      Med-Trans is presently the Plaintiff in this case and in another Florida Middle District action, against C2C and Blue Cross and Blue Shield of Florida, Inc. (Case No. 3:22-cv-1139).

9.      Also in the Middle District, another GMR subsidiary, REACH Air Medical Services, LLC, is suing C2C and Kaiser Foundation Health Plan Inc. (Case No. 3:22-cv-01153).

---

[1] Ordinarily matters outside the four corners of the Complaint would not be properly included in a Motion to Dismiss; however, as discussed more fully infra, an action for vacatur of an arbitration award is not initiated by complaint, but rather requires a motion. Even if this were not the case, the Arbitration Award is central to the Complaint's allegations and would thus be incorporated therein.

3

10.    A third GMR affiliate, Guardian Flight, LLC, is suing a different IDRE, Medical Evaluators of Texas ASO, LLC, and Aetna Health, Inc., in the Southern District of Texas. (Case No. 4:22-cv-03805).

11.    With certain exceptions related to the amounts in dispute, the nature of the medical circumstances requiring air transport, and some detail about each plan and its network, each of the four complaints are highly similar if not substantially identical. All are brought by the same national counsel.

12.    The Plaintiffs' request that the Court vacate the IDRE's Arbitration Award should be dismissed because it is procedurally and substantively defective, as discussed more fully below.

## MEMORANDUM OF LAW

The Complaint fails both procedurally and substantively. Procedurally, the request has not been properly made by motion as required by the Federal Arbitration Act ("FAA"). If Plaintiff were to serve a motion now it would be untimely. Substantively, the Plaintiffs fail to allege any grounds for vacatur with any particularity or evidentiary support. Finally for the reasons set forth in codefendant C2C's Motion, Plaintiff's demand for attorneys' fees should be stricken.

**1.    Standard of Review for Vacatur of an Arbitration Award by an IDRE.**

The NSA provides that an arbitration decision of an IDR entity such as C2C is final and is not subject to judicial review with the exception of the grounds set forth in the FAA for vacating an arbitration award. Specifically, NSA Section 9816(c)(5)(E) reads as follows:

4

(E) Effects of determination.

(i) In general. A determination of a certified IDR entity under subparagraph (A)—

(I) shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim; and

(II) shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of title 9, United States Code.

26 U.S.C. § 9816(c)(5)(E).

The FAA allows federal courts to vacate an arbitration award only in highly limited circumstances. See *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008) (holding that §§ 10 and 11 of the FAA provide the exclusive grounds for expedited vacatur and modification). These narrow circumstances are enumerated in the Statute:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudiced; or

 (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

It is the party seeking vacatur that bears the burden to prove one of the statutory grounds. *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1289 (11th Cir. 2002). The

motion filed by the moving party must "set forth sufficient grounds to vacate the arbitration award[.]" *O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 748 (11th Cir. 1988). "A party moving to vacate an arbitration award pursuant to FAA Section 10 immediately bears the burden of proof." *PG Publ'g, Inc. v. Newspaper Guild of Pittsburgh*, 19 F.4th 308, 314 (3d Cir. 2021). It is presumed under the FAA that arbitration awards will be confirmed, and that "federal courts should defer to an arbitrator's decision whenever possible." *World Bus. Paradise, Inc. v. SunTrust Bank*, 403 F. App'x 468, 469 (11th Cir. 2010). "[J]udicial review of arbitration decisions is among the narrowest known to the law." *AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007). Courts may vacate an arbitration award "only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568, 133 S. Ct. 2064, 186 L. Ed. 2d 113 (2013). The Supreme Court has concluded that motions to vacate under FAA Section 10 result in summary proceedings, and an application for confirmation, vacatur, modification, or correction of an arbitration award is to receive streamlined treatment as a motion. *See generally Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 27, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983) (proceedings under the FAA are meant to follow "summary and speedy procedures"), questioned on other grounds by *Maye v. Smith Barney Inc.* 897 F. Supp. 100 (S.D.N.Y. 1995)..Under every facet of this standard, Plaintiff's Complaint fails to satisfy the requirements for vacatur, as set forth more fully below

6

**2.    Plaintiff's Request Should be Denied for Failure to Follow the Procedures Set Forth in the FAA.**

The Court should deny Plaintiff's request outright, without consideration of the merits, because Plaintiff failed to follow the appropriate procedures for making a motion to vacate as set forth in the FAA. Plaintiff couches its vacatur request as a Complaint instead of making a motion as required by the FAA. Additionally, Plaintiff's failure to timely meet this requirement timely is fatal and the Court need not consider the merits of Plaintiff's contentions. Plaintiff also fails to satisfy the requirement that the grounds for vacatur be alleged with sufficient particularity. The Complaint's conclusory allegations that CHP "misrepresented" facts or "used undue means" to procure an award are insufficiently pled, consist entirely of supposition, and lack any evidentiary support. So too do Plaintiff's contentions that C2C showed evident partiality, or engaged in any prejudicial misbehavior, exceeded its powers, or so imperfectly executed them that no final, definite award was rendered.

a.    <u>Plaintiff failed to request vacatur by motion as the FAA requires.</u>

Plaintiff has ignored a fundamental procedural requirement of the FAA in failing to request vacatur by motion. An application for vacatur under the FAA must be "made and heard in the manner provided by law for the making and hearing of motions[.]" 9 U.S.C. §6. The FAA and the Rules of Civil Procedure "do not permit a party to initiate a challenge to an arbitration award by filing a complaint." *O.R. Sec.,* 857 F.2d at 745 (internal citations omitted). Simply invoking vacatur in a Complaint,

as Plaintiff has done here, does not satisfy the procedural requirements set forth in the FAA regarding a motion to vacate an arbitral award.

The procedural requirement is important to the proper adjudication and enforcement of arbitration awards. The Eleventh Circuit has held that "[t]he manner in which an action to vacate an arbitration award is made is obviously important, for the nature of the proceeding affects the burdens of the various parties as well as the rule of decision to be applied by the district court." *Id.*. "If … the application to vacate the award may be brought in the form of a complaint, then the burden of dismissing the complaint would be on the party defending the arbitration award." *Id.* "… If the defending party did not prevail on its motion to dismiss, the proceeding to vacate the arbitration award would develop into full scale litigation, with the attendant discovery, motions, and perhaps trial." *Id.* Therefore, the Court reasoned, "[t]he proper procedure … is for the party seeking to vacate an arbitration award to file a Motion to Vacate in the district court." *Id* at 746. Because the Plaintiff failed to adhere to this fundamental requirement, the Court cannot grant the relief requested and must deny the request and dismiss the action.

Plaintiff would likely argue that such a distinction elevates form over substance, and may even point to cases where a District Court has vacated an arbitration award where the request was contained in a document styled as a complaint. *See O.R. Sec.,* 857 F.2d at 746 and *Johnson v. Directory Assistants Inc.*, 797 F.3d 1294, 1299 (11th Cir. 2015) (reasoning that "an erroneous nomenclature does not prevent the court from recognizing the true nature of a motion"). However, as the Eleventh Circuit has

explained, those cases "merely affirmed a decision of the district court to construe a facially non-compliant filing in a way that comported with the requirements of the FAA … [which] the court was certainly under no obligation to do[,]" and that neither case "should be interpreted as requiring the district court to relax the strict procedural requirements of the FAA to the point that any filing will be deemed sufficient to raise the issue of vacatur." *CareMinders Home Care, Inc. v. Kianka*, 666 F. App'x 832, 835 (11th Cir. 2016) (holding that request for vacatur contained within a pleading styled "Answer, Affirmative Defenses, and Counterclaim to Vacate Arbitration Award" was not a motion for vacatur and failure to timely file same was fatal to judicial review). The Court in *Careminders* further distinguished the *Johnson* and *O.R.* cases, noting that despite initially couching their requests for relief in the form of pleadings rather than motions, "the parties in each had fully briefed the issue of vacatur[.]" *Id.* Such is not the case here. *Careminders* stands for the proposition that a failure to fully brief a request for vacatur "within the allotted time" is by itself grounds to deny the request. *Id.* The Complaint here contains neither citations to authority (aside from statutory cites to the NSA and FAA and to litigation over the rulemaking) or to any record evidence that could ever meet the showing necessary for vacatur under FAA Section 10(a). The Complaint can by no stretch be construed as a motion which fully briefs the issue of vacatur, and Plaintiff is out of time to remedy the shortcomings.  b.

> b.   <u>Any vacatur motion Plaintiff attempts to make would be untimely under the FAA.</u>

Any subsequent motion that Plaintiff now brings will fall outside the time limit for serving notice of a motion to vacate an arbitration award under the FAA.  9 U.S.C. §12 provides that "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." The Arbitration Award was decided on August 29, 2022. Although the Complaint was filed in this case on October 4, 2022, it did not constitute or contain an appropriate motion under the FAA. Allowing an extra day where the final day of the period is a weekend day, the three month period in which to serve notice of a vacatur motion expired Monday, November 28, 2022. Thus, Plaintiff's request must be denied as untimely. The Eleventh Circuit has held that "[a] party's failure to move to vacate an arbitral award within the three-month limitation period bars him from raising the alleged invalidity of the award as a defense in opposition to a motion to confirm the award." *Booth v Hume Pub. Inc.*, 902 F.2d 925, 929 n.4 (11th Cir. 1990). Likewise the Court can and should deem Plaintiff's failure to file a motion to vacate within three months as fatal to the relief Plaintiff seeks. *CareMinders,* 666 F. App'x at 835.

**3.   Plaintiff's Complaint Does Not Carry the Heavy Burden Necessary to Vacate an Arbitration Award**

Plaintiff's Complaint appears to allege that three bases exist to vacate the Arbitration Award. Plaintiff's first contention is that the offer CHP submitted to C2C contained a "misrepresentation of fact" or used "undue means". This argument

10

appears rooted in Plaintiff's assumption (without evidentiary support) that CHP did not calculate the QPA in accordance with the applicable provisions of the NSA and its implementing regulations. These conclusory allegations do not state (much less prove) a basis for vacatur.

Second, Plaintiff argues that "an anonymous arbitrator" within C2C showed evident partiality by selecting CHP's offer over Plaintiff's. Plaintiff seems to contend that the same alleged facts (again without evidentiary support or citation to legal authority) support a finding that C2C committed misconduct in refusing to postpone a hearing on cause shown, or in refusing to hear evidence pertinent and material to the controversy; is guilty of some other misbehavior by which the rights of any party have been prejudiced, and exceeded its powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. There is no legal authority that any of these reasons for vacatur is triggered by Plaintiff's threadbare allegations, which lack any substance apart from Plaintiff's dissatisfaction with the award.

Alternatively, Plaintiff argues that the NSA provides an additional basis for vacatur not found in the FAA, that the award of an IDRE entity is not binding "where there is evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim." However, Plaintiff overlooks that the NSA makes this pronouncement in the conjunctive with the specific proviso that the only decisions subject to judicial review are those described in "any of paragraphs (1) through (4) of section 10(a) of title 9, United States Code [the FAA]."

a.    <u>Plaintiff offers no evidence that CHP calculated the QPA inaccurately in its submission.</u>

Plaintiff presumes CHP's calculation of the applicable QPA for the services was incorrect, and that the resulting alleged inaccuracy constitutes a "bad faith" submission to C2C, which somehow supports vacatur of the Arbitration Award under Section 10(a)(1) of the FAA. However, Plaintiff presents no evidence of any inaccuracy in CHP's calculation. Its allegations even take the form of a tacit admission that it has no such evidence; every allegation Plaintiff makes to support its claim that CHP did not perform the calculation properly is predicated with the statement, "on information and belief." See Dkt. 1, P. 16, ¶33. This is not the showing necessary for vacatur of an arbitration award, where the burden is on the moving party to prove one of the statutory grounds. *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1289 (11th Cir. 2002); *O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc.*, 857 F.2d 742, 748 (11th Cir. 1988) (proponent of vacatur must "set forth sufficient grounds to vacate the arbitration award in his moving papers.") An allegation that CHP's calculation was incorrect "on information and belief" constitutes nothing more than a "[v]ague, remote and speculative charge" that cannot support vacating an arbitration award. See *Scott v. Prudential Securities, Inc.*, 141 F.3d 1007, 1015 (11th Cir. 1998), overruled in part on other grounds, *Hall St. Assocs. L.L.C v. Mattell, Inc.*, 552 U.S. 576, 584-585 (U.S. 2008).

Even if the resultant QPA calculation had been inaccurate, grounds would not exist to vacate the Arbitration Award. "Neither *erroneous legal conclusions* nor *unsubstantiated factual findings* justify federal court review of an arbitral award under the

12

statute, which is unambiguous in this regard." *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 663 (9th Cir. 2012) (emphasis added). As more forcefully stated by the Eleventh Circuit:

> An arbitrator's result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet it may not be subject to court interference. The offending arbitrator's award which properly results in our setting it aside must be so offensive that one is to be seen only rarely. Examples come to mind more readily than exist in the real world.
>
> *Delta Airlines, Inc. v. Air Line Pilots Ass'n, Int'l,* 861 F.2d 665, 670 (11th Cir. 1998).

Neither does Plaintiff's description of an alleged QPA miscalculation by CHP as "use of undue means" provide any basis for vacatur. Courts of the Eleventh Circuit have held that "[t]he term 'undue means' must be read in conjunction with the words "fraud" and "corruption" and thus requires proof of intentional misconduct. *Liberty Sec. Corp. v. Fetcho*, 114 F.Supp. 2d 1319, 1321 (S.D. Fla. 2000) (citing *Paine Webber Group Inc. v. Zinsmeyer Trusts Partnership*, 187 F.3d 988, 991 (8th Cir. 1999)) (citing in turn *Drayer v. Krasner*, 572 F.2d 348, 352 (2d Cir. 1978). Under this standard, the moving party must establish conduct "equal in gravity to bribery, corruption, or physical threat to an arbitrator." *Liberty Sec.*, 114 F.Supp. 2d at 1321. An allegation that CHP "misrepresented the facts by submitting a purported QPA that was not properly calculated under federal law" clearly does not rise to the level of "undue means" as used in the FAA. Plaintiff can offer no evidence indicating fraud, bribery, corruption or any conduct of similar gravity by CHP in the arbitration, and no rationale exists here for vacatur of the Arbitration Award.

13

b. <u>No evidence supports plaintiff's claim of any evident partiality by C2C.</u>

Under Section 10(a)(2) of the FAA, courts may vacate an arbitration award "where there was evident partiality or corruption in the arbitrators." *Citigroup Global Mkts., Inc. v. Bacon*, 562 F.3d 349, 352 (5th Cir. 2009). In order to vacate an Arbitration Award for evident partiality, the Eleventh Circuit requires clear and convincing evidence that either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *Univ. Commons-Urbana, Ltd. v. Universal Constructors*, Inc., 304 F.3d 1331, 1339 (11th Cir. 2002). The burden to establish evident partiality is an onerous one, because the urging party must demonstrate that the partiality alleged was "direct, definite and capable of demonstration rather than remote, uncertain and speculative." *Id.*

Plaintiff fails here to make any specific allegation of evident partiality, or to show any support for these claims with evidence. There is no mention of a potential conflict of interest, or even a plausible suggestion why one might exist, let alone clear and convincing evidence. Instead, Plaintiff merely asserts that "an anonymous person at C2C calculated the offers as a percentage of the QPA, selected the one closest to the QPA, and stated that the submitted information did not support the allowance of a payment at a higher OON rate."[2] Dkt. 1, p. 18, ¶ 37. Plaintiff has failed to point this

---

[2] The highly similar complaints filed in the other suits brought by the GMR Entities contain the same allegations of an "anonymous arbitrator" suffering from evident partiality in two other cases against C2C and one case against an IDRE known as Medical Evaluators of Texas ASO. Taken altogether,

Court to any evidence of partiality on which to base a vacatur. This is insufficient to carry Plaintiff's burden, and the Arbitration Award cannot be vacated for "evident partiality".

      c.    <u>No Evidence Supports Plaintiff's Claim that C2C Committed Prejudicial Misbehavior, Exceeded its Powers, or So Imperfectly Executed Them That a Final, Definite Award on the Subject Matter Was Not Made.</u>

In similar conclusory fashion and without factual support backed by admissible evidence, Plaintiff argues that these same circumstances (the calculation of the two offers as a percentage of the QPA, the fact that the arbitrator selected the one closest to the QPA,  and the IDRE's statement that the submitted information did not support the allowance of a payment at a higher OON rate) trigger §10(a)(3) (concerning arbitrators guilty of misconduct in refusing to postpone a hearing on sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced) and § 10(a)(4) (where arbitrators so exceed their powers, or so imperfectly execute them, that a mutual, final, and definite award upon the subject matter submitted was not made). However, vague and conclusory allegations unsupported by specific factual allegations or citation or reference to the record by which the Court could determine that the arbitrator is guilty of these charges may not form the basis of an order vacating an

---

Plaintiff is attempting to ascribe evident partiality onto an unknown number of "anonymous arbitrators" within not only C2C but another IDRE in favor of multiple different health plans including CHP, Blue Cross and Blue Shield of Florida, the Kaiser Foundation, and Aetna. See Middle District Florida Cases No. 3:22-cv-01139-HES-JBT and No. 3:22-cv-01153, as well as Southern District Texas Case No. 4:22-cv-03805.

arbitration award. See, e.g., *Wash. Mut. Bank, F.A. v. Am. Fin. Network,* 414 F. Supp. 2d 1155, 1157 (S.D. Fla. 2006). This is particularly true given the great deference federal courts extend to arbitrators' procedural decisions. *Id.*

The closest Plaintiff comes to attempting to support any claims of arbitrator misconduct is its statement that: "as demonstrated by C2C's short award, Capital Health's payment offer prevailed solely because it was closest to the QPA." Not only is this an insufficient, speculative, and conclusory allegation, it is factually inaccurate. The Arbitration Award itself, which Plaintiff did not attach or otherwise offer in support of its request for vacatur, reflects otherwise. It specifically states that in determining which offer to select, C2C was required to consider:

> A. The qualifying payment amount (QPA) for the applicable year for the same or similar item or service.
>
> B. Additional related and credible information relating to the offer submitted by the parties.
>
> Parties may submit additional information regarding any of the six circumstances, which include:
>
> 1. The quality and outcomes measurements of the provider of air ambulance services that furnished the services.
>
> 2. The acuity of the condition of the participant, beneficiary, or enrollee receiving the service, or the complexity of furnishing the service to the participant, beneficiary, or enrollee.
>
> 3. The level of training, experience, and quality of the medical personnel that furnished the air ambulance services.
>
> 4. The air ambulance vehicle type, including the clinical capability level of the vehicle.
>
> 5. The population density of the point of pick-up for the air ambulance (such as urban, suburban, rural, or frontier).

16

6. Demonstrations of good-faith efforts (or lack thereof) made by the OON--provider of air ambulance services or the plan to enter into network agreements, as well as contracted rates between the provider and the plan during the previous four plan years.

See *Ex. 1*, p. 1.

Despite Plaintiff's repeated mantra that the arbitrator applied an "illegal presumption," the foregoing factors are precisely what IDR entities are instructed to consider in determining which offer to select in a dispute related to air ambulance services. See 87 Fed. Reg. 52618. This is true *after* the final rulemaking that followed the decision that vacated the interim final rule in *Texas Medical Association, et al. v. United States Department of Health and Human Services, et al.*, Case No. 6:21-cv-425 (E.D. Tex.) (February 23, 2022) and *LifeNet, Inc. v. United States Department of Health and Human Services, et al.*, Case No. 6:22-cv-162 (E.D. Tex.) (July 26, 2022). *Id.* Therefore, the considerations listed as considered by the arbitrator conform with the current state of law and regulations implementing the NSA. The arbitrator cannot be said to have committed any of the sorts of misconduct discussed in FAA Section 10(a)(3-4).

d.   <u>No independent ground for vacatur exists for evidence of misrepresentation of the facts presented to an IDRE Entity.</u>

Plaintiff provides even less support for its contention that NSA Section 9816 (c)(5)(E) creates an additional ground for vacatur outside the four enumerated bases in 9 USC § 10(a), or for its claim that such a ground exists in this case. A careful reading of Section 9816(c)(5)(E) reveals that what Plaintiff calls a fifth basis for setting aside the arbitration award is nothing of the sort.

17

(i) In general. A determination of a certified IDR entity under subparagraph (A)—

> (I) shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim; *and*

> (II) shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of title 9, United States Code.

26 U.S.C. § 9816(c)(5)(E) (emphasis added).

The "and" joining subparts (I) and (II) in subsection (i) requires that the two subparts be read conjunctively; therefore all requirements of the section must be satisfied to give the statute its intended meaning. Assuming, *arguendo*, that there is evidence of misrepresentation of facts presented to the IDR entity (of which there is none here), the grounds for subjecting a determination for judicial review *remain* limited to any case described in any of the paragraphs (1) through (4) of FAA section 10(a). To interpret the statute as conferring a right to judicial review in the event of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR would render meaningless the "and" connecting that provision to subpart (ii) (limiting judicial review to the four enumerated bases of FAA Section 10(a)). Moreover, if fraud or misrepresentation were indeed an additional basis for vacatur, there is no evidence of same here, as discussed more fully in Section 3(a) *supra*.

## 4. Joinder in Codefendant C2C's Motion to Strike Plaintiff's Demand for Attorneys' Fees.

CHP adopts as if set forth fully herein Codefendant C2C's Motion to Strike Plaintiff's Demand for Attorneys' Fees [Dkt. No. 24].

## LOCAL RULE 3.01(G) CERTIFICATION.

Pursuant to Local Rule 3.01(g), M.D. Fla., the undersigned hereby certifies that on the afternoon of November 30, 2022, counsel for Defendant conferred with Mr. Lanny Russell, Esq., counsel for Plaintiff,  via telephone call, regarding the relief requested in this motion. At the time, Mr. Russell was unable to advise of Plaintiff's position without conferring with his co-counsel.  At the time of this filing, the undersigned has not heard back from Plaintiff's counsel and is thus unable to ascertain Plaintiff's position, but given the late hour, Defendant must proceed with filing. Defendant's counsel will diligently continue its efforts to ascertain Plaintiff's position regarding the relief requested and will supplement the motion with a statement certifying whether the parties have resolved all or part of the motion.

## CONCLUSION

Plaintiff did not timely follow the requirements of the FAA in seeking vacatur of the Arbitration Award made by the IDRE. Moreover, none of the Plaintiff's allegations make reference to any admissible evidence, nor does Plaintiff offer legal precedent supporting the proposition that such facts, if true, constitute grounds for vacatur. Therefore, Plaintiff has failed to carry its burden of properly asserting grounds sufficient to support an order vacating the Arbitration Award, and its improper request for vacatur must be denied and dismissed.

For the reasons set forth herein, Defendant CAPITAL HEALTH PLAN, INC. respectfully requests that an order be entered denying Plaintiff's request for relief and dismissing Plaintiff's Complaint, with prejudice, or, alternatively that the Arbitration

Case No. 3:22-cv-1077-HES-JBT

Award in CHP's favor be confirmed, and for such other and further relief as is just and proper.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 30, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Lanny Russell
SMITH HULSEY & BUSEY
One Independent  Drive
Suite 3300
Jacksonville,  Florida 32202
Telephone; (904) 359-7700
Facsimile: ( 359-7708
E: lrussell@smithhulsey.com

Adam T. Schramek, Lead Counsel
NORTON ROSE FULBRIGHT US
LLP
98 San  Jacinto Boulevard
Suite 1100
Austin, TX  78701-4255
Telephone:  (512) 474-5201
Facsimile:  (512) 536-4598
E:
adam.schramek@nortonrosefulbright.com
*Pro Hac Vice*

Abraham  Chang
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
E: abraham.chang@nortonrosefulbright.com
*Pro Hac Vice*
*Attorneys  for Med-Trans Corporation*

1056008\312024687.v1

Case No. 3:22-cv-1077-HES-JBT

s/ *Steven D. Lehner*

Steven D. Lehner
Florida Bar No. 39373
slehner@hinshawlaw.com
Ruel W. Smith
Florida Bar No. 36548
rsmith@hinshawlaw.com
HINSHAW & CULBERTSON LLP
100 South Ashley Drive
Suite 500
Tampa, FL 33602
Telephone: 813-276-1662
Facsimile: 813-436-8738
Secondary:
TAMDocket@hinshawlaw.com;
mmatthews@hinshawlaw.com;
hbrown@hinshawlaw.com;
smcmillan@hinshawlaw.com
*Attorneys for Defendant CAPITAL HEALTH PLAN, INC.*

1056008\312024687.v1