## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

MED-TRANS CORPORATION,

     Plaintiff,

v.                                     Case No. 3:22-cv-1077-TJC-JBT

CAPITAL HEALTH PLAN, INC.
and C2C INNOVATIVE
SOLUTIONS, INC.,

     Defendants.

_____

REACH AIR MEDICAL SERVICES
LLC,

     Plaintiff,

v.                                       Case No. 3:22-cv-1153-TJC-JBT

KAISER FOUNDATION HEALTH
PLAN INC. and C2C INNOVATIVE
SOLUTIONS, INC.,

     Defendants.

_____

## O R D E R

     During a medical emergency, a patient often has little choice in how to get to the hospital. And when great distances must be covered quickly or the emergency occurs in a remote location, air ambulance transportation can be necessary. These services are not cheap—especially when the air ambulance provider is not "in-network" with the patient's private health insurance. But

when an insurer and an out-of-network air ambulance provider cannot agree on fair reimbursement, how should the matter be resolved without the patient receiving a large bill? Congress sought to solve this problem with the No Surprises Act ("NSA"), enacted in 2020, which created a uniform reimbursement process, complete with binding arbitration.

Plaintiffs, two affiliated air ambulance companies, challenge reimbursements they received under this arbitration process on procedural and legal grounds.[1] Their near-identical suits, which name different insurance companies but the same arbitrator, raise several questions of first impression. After extensive briefing and oral argument, the parties ask the Court to determine how the No Surprises Act and the Federal Arbitration Act intersect, the proper way to seek judicial review of NSA arbitration decisions, and whether NSA arbitrators are proper parties to suit.

## I.   BACKGROUND

### A.   The No Surprises Act

The NSA simultaneously modified portions of the Public Health Service Act, the Internal Revenue Code, and the Employee Retirement Income Security Act. 42 U.S.C. §§ 300gg et seq.[2] Its main purpose was to end surprise medical

---

[1] Plaintiff Med-Trans Corporation filed a third near-identical suit, 3:22-cv-1139, which has since been voluntarily dismissed.

[2] As the only relevant statute here, the Court will cite only the Public Health Service Act.

billing by ensuring that certain out-of-network providers—such as air ambulances—are treated the same as in-network providers. <u>See</u> § 300gg-112(a)(1). To this end, the NSA created a standardized process for the presentation and payment of air ambulance transport claims. § 300gg-112(a)(3). After receiving a bill from an air ambulance provider, the insurance company either makes or refuses to make an initial payment. <u>Id.</u> If the air ambulance company disagrees with the insurance company's decision, it can initiate open negotiations. § 300gg-112(b)(1)(A).

If these negotiations fail, the dispute goes to Independent Dispute Resolution ("IDR") for "baseball style" arbitration. § 300gg-112(b)(1)(B). IDR entities must be qualified by the governing executive agency. § 300gg-111(c)(4). If the parties cannot agree to a specific IDR entity, one is randomly assigned to the case. <u>Id.</u> The parties submit their best offers to the IDR entity, which analyzes several factors to pick a winner. § 300gg-112(b)(5). One of these factors is the "qualifying payment amount," or QPA. § 300gg-112(b)(5)(C)(i). This number, put very simply, is meant to represent the equivalent median in-network reimbursement rate or, if the insurer has no equivalent in-network data, the median in-network rate for the geographic area. <u>See</u> § 300gg-111(a)(3)(E)(i)–(iii). The IDR decision is binding "in the absence of a fraudulent claim or evidence of misrepresentation of facts" and "not . . . subject to judicial review" except on the same grounds as are available to review awards under

the Federal Arbitration Act. § 300gg-111(c)(5)(E)(i)(II) (citing 9 U.S.C. § 10(a)(1)–(4)).

Finally, the NSA charges the Departments of Health and Human Services, Labor, and Treasury with establishing regulations to flesh out the dispute resolution process. § 300gg-112(b)(2)(A). These regulations provide detailed instructions on calculating and disclosing QPAs. See 45 C.F.R. § 149.140. Relevant here, insurers are directed to furnish providers with the QPA at the time they first deny full payment and explain how they calculated the QPA within a reasonable time after the provider requests more information. Id. § 149.140(d)(1).

## B.   Facts[3]

### 1.   Med-Trans Corporation, 3:22-cv-1077

On January 5, 2022, Med-Trans operated an emergency flight transporting a patient from Tallahassee to Orlando. (Doc. 1 ¶ 3 in 3:22-cv-1077). The patient was insured by Capital Health HMO. Id. ¶ 4. Med-Trans is out-of-network with Capital Health. Id. Three months later, on April 8, 2022, Capital Health sent Med-Trans an explanation of benefits form stating it allowed $16,361.54 for the transport. Id. ¶ 28. Capital Health failed to provide its calculated QPA, contact information for initiating negotiations, or information

---

[3] The Court treats the following facts as true for purposes of this Order. See Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274 (11th Cir. 1999)

about IDR with the explanation of benefits. Id. ¶¶ 27, 28. One month later, on May 16, 2022, Med-Trans initiated open negotiations and requested that Capital Health disclose its QPA and information on how it calculated the number. Id. ¶ 30. Capital Health did not provide the requested information. Id. ¶ 30.

The dispute proceeded to IDR. The parties could not agree on an entity to arbitrate, so Defendant C2C Innovative Solutions, Inc. was randomly assigned from a list of eleven eligible IDR entities. Id. ¶¶ 5, 16. Capital Health shared its QPA with C2C, still withholding the information from Med-Trans. Id. ¶¶ 5, 31. The parties submitted their reimbursement proposals to C2C, with Capital Health proposing $27,624.00 and Med-Trans proposing $47,285.17 for the same billing codes. (Doc. 26-1 at 1–2). On August 29, 2022, C2C selected Capital Health's proposal, which it also identified as Capital Health's QPA.[4] Id.; (Doc. 1 ¶¶ 24, 34.

Med-Trans challenges this award for two reasons. First, on top of Capital Health's alleged failure to disclose QPA information, Med-Trans alleges that Capital Health incorrectly calculated the QPA. Because Capital Health is relatively small and operates in a confined geographic area, it did not have enough preexisting in-network fixed-wing air ambulance contracts from which

---

[4] For simplicity, the Court refers to the overall QPA amount without breaking it down by billing code.

to generate a QPA. (Doc. 1 ¶ 33). But if Capital Health used a database of other companies' contracts from the same geographic area to calculate a QPA, this was never disclosed. Id. So, Med-Trans alleges, any representation of a QPA to C2C involved misrepresentation. Id. ¶ 36.

Second, Med-Trans challenges C2C's method of picking a winner. In the IDR decision, C2C repeatedly emphasized Capital Health's QPA. Id. ¶ 34; see (Doc. 26-1). In fact, the decision described the parties' various offers in terms of "percentage[s] of the QPA" and allegedly treated the QPA as a presumptive baseline. (Doc. 1 ¶ 34). This shows, Med-Trans alleges, that C2C erroneously gave too much weight to the QPA in its analysis, requiring a rehearing. Id. ¶¶ 34, 37, 38.

### 2. REACH Air Medical Services, 3:22-cv-1153

REACH Air's Complaint is similar. On February 7, 2022, REACH operated an emergency helicopter flight between Santa Rosa and Redwood City, California. (Doc. 1 ¶ 3 in 3:22-cv-1153). The patient's insurer was Kaiser Foundation Health Plan Inc. Id. ¶ 4. REACH is out-of-network with Kaiser. Id. Kaiser paid Reach $24,813.48 for the transport, and on April 21, 2022, issued an explanation of benefits. Id. ¶¶ 4, 28. Kaiser informed REACH that the $24,813.48 payment was also its QPA. Id. ¶ 4, 28. It is unclear whether Kaiser provided information about IDR or contact information for open negotiations along with its payment. See id. ¶¶ 27–28.

Not satisfied with Kaiser's payment, REACH initiated open negotiations. Id. ¶ 29. Although REACH requested more information on how Kaiser had calculated its QPA, Kaiser refused. See id. The parties could not resolve their dispute through negotiation and moved next to IDR. Id. They could not agree on an IDR entity, so C2C was randomly assigned. Id. ¶ 5. While participating in the IDR process, Kaiser submitted a new QPA to C2C—totaling $17,304.29— about $7,500 less than the first QPA provided to REACH. Id. ¶¶ 28, 30. Kaiser identified the $24,813.48 it had already paid as its proposed payment, and REACH offered $51,844.60. Id. ¶ 34; (Doc. 31-1 at 2). C2C selected Kaiser's offer, noting that it exceeded the QPA. (Doc. 1 ¶ 34).

REACH challenges this award for two reasons. First, it alleges that Kaiser's QPA was misleading or erroneous. By submitting a second, smaller QPA at the IDR stage, Kaiser misled C2C into believing Kaiser was offering more than the QPA. Id. ¶ 34. Taken together with Kaiser's refusal to explain how it calculated the first QPA, REACH alleges, Kaiser's conduct rises to the level of misrepresentation and bad faith. Id. ¶ 37.

Second, REACH challenges C2C's reason for choosing Kaiser's offer. In the IDR decision, C2C repeatedly emphasized Kaiser's QPA. Id. ¶¶ 34, 38; see (Doc. 31-1). In fact, the decision described the parties' various offers in terms of "percentage[s] of the QPA" and allegedly treated the QPA as a presumptive baseline. (Doc. 1 ¶ 34). This shows, REACH alleges, that C2C erroneously gave

too much weight to the QPA in its analysis, requiring a rehearing. Id. ¶¶ 34, 38, 39.

### C.     Procedural background of these cases

Defendant Capital Health Plan moves to dismiss Med-Trans' Complaint (Doc. 26 in 3:22-cv-1077), and Kaiser moves to dismiss REACH's Complaint (Doc. 30 in 3:22-cv-1153). C2C separately moves to dismiss both Complaints and moves to strike Med-Trans and REACH's requests for attorneys' fees, (Doc. 24 in 3:22-cv-1077); (Doc. 19 in 3:22-cv-1153), which Capital Health and Kaiser join, (Doc. 26 in 3:22-cv-1077); (Doc. 30 in 3:22-cv-1153). Interested party America's Health Insurance Plans moves for leave to file an amicus brief supporting Kaiser's motion to dismiss (Doc. 48 in 3:22-cv-1153), and the United States has filed a statement of interest (Doc. 58 in 3:22-cv-1077). On May 16, 2023, the Court held a hearing on all pending motions, the record of which is incorporated by reference. (Doc. 59 in 3:22-cv-1077); (Doc. 51 in 3:22-cv-1153). Following the hearing, the Court ordered supplemental briefing, (Docs. 52, 57 in 3:22-cv-1153), and the insurance companies filed notices of supplemental authority, (Docs. 63, 64 in 3:22-cv-1077); (Docs. 61–63 in 3:22-cv-1153). All motions have been fully briefed and the Court has thoroughly reviewed the record in these cases.

## II.   CAPITAL HEALTH AND KAISER'S MOTIONS TO DISMISS

To begin, the insurers and air ambulance companies disagree about the proper method of challenging an IDR decision, and thus about the appropriate timing and pleading standards. Med-Trans and REACH argue that IDR losers must file a complaint in federal court. (Doc. 40 at 16 in 3:22-cv-1077); (Doc. 37 at 4 in 3:22-cv-1153). Kaiser and Capital Health argue that the Federal Arbitration Act ("FAA") requires that IDR challenges be brought as motions for vacatur under Federal Rule of Civil Procedure 7(b). (Doc. 26 at 7 in 3:22-cv-1077); (Doc. 30 at 16 in 3:22-cv-1153).

Generally, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Although a party who "alleg[es] fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake," FED. R. CIV. P. 9(b), a traditional suit challenging an IDR result would resemble any other suit.

Contesting arbitration awards under the FAA is different. These challenges must be brought by motion for vacatur within three months of the adverse award and must be pled with particularity. 9 U.S.C. § 12; FED. R. CIV. P. 7(b)(1)(B); O.R. Sec., Inc. v. Pro. Plan Assocs., Inc., 857 F.2d 742, 745 (11th Cir. 1988). The party challenging the arbitration award bears the burden "to set forth sufficient grounds the vacate the arbitration award in his moving

9

papers. The rules of notice pleading, FED. R. CIV. P. 8, do not apply to a proceeding to vacate an arbitration award . . . ." <u>O.R. Sec., Inc.</u>, 857 F.2d at 748.

## A.   The FAA's procedural law does not govern appeals of NSA IDR awards

There are two ways that the insurance companies[5] suggest the FAA's procedural rules could govern this suit: by express incorporation or by default. <u>See, e.g.</u>, (Doc. 30 at 13; Doc. 45 at 5 in 3:22-cv-1153). First, Congress could have intended to place the NSA IDR awards under the FAA because the NSA incorporates parts of the FAA. Failing this, the NSA's IDR process, as a form of arbitration, could fall under the FAA by default. Ultimately, neither argument is persuasive.

### 1.   <u>The NSA does not incorporate the FAA's procedural rules</u>

Although the NSA invokes the FAA, it incorporates only one specific aspect. The NSA states, "A determination of a certified IDR entity . . . shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of title 9"—the FAA. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). These four paragraphs outline the four scenarios in which a court may vacate an arbitration award:

(1)   where the award was procured by corruption, fraud, or undue means;

---

[5] As their positions are similar, the Court gives both insurance companies the benefit of all arguments raised by each other.

    (2)   where there was evident partiality or corruption in the arbitrators, or either of them;

    (3)   where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

    (4)   where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)–(4). Although this explains the grounds upon which a party may challenge an award, it does not discuss <u>how</u> to raise this challenge. In the FAA, those rules are found in other sections, such as §§ 6, 9, and 12 of the FAA. But the NSA does not invoke or discuss §§ 6, 9, 12, or any other sections of the FAA.

"[I]n interpreting a statute a court should always turn first to one, cardinal canon before others." <u>Villarreal v. R.J. Reynolds Tobacco Co.</u>, 839 F.3d 958, 969 (11th Cir. 2016) (quoting <u>Conn. Nat'l Bank v. Germain</u>, 503 U.S. 249, 253–54 (1992)). Namely, "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." <u>Id.</u> Congress invoked four paragraphs of the FAA to describe "cases" where an IDR decision may be "subject to judicial review"—nothing more. 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II). The FAA's procedural requirements for vacating an award, such as 9 U.S.C. § 12's requirement of a motion filed within three months, are not incorporated.

### 2.   <u>The FAA does not presumptively apply to NSA IDR</u>

Trying a different tack, the insurance companies argue more broadly that the entire FAA applies by default, even without express incorporation. (Doc. 45 at 5 in 3:22-cv-1153). They contend that NSA IDR is a form of arbitration, and thus the Court should presume that Congress intended it "to fit within existing arbitration law." <u>Id.</u> (quoting <u>Cheminova A/S v. Griffin LLC</u>, 182 F. Supp. 2d 68, 74 (D.D.C. 2002)). The Court is unpersuaded.

At its core, arbitration consists of submitting a dispute to a third party for resolution. <u>See</u> <u>Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.</u>, 524 F.3d 1235, 1239 (11th Cir. 2008) (paraphrasing <u>AMF Inc. v. Brunswick Corp.</u>, 621 F. Supp. 456, 460 (E.D.N.Y. 1985)); <u>Arbitration</u>, <u>Black's Law Dictionary</u> (11th ed. 2019) ("A dispute-resolution process in which the disputing parties choose one or more neutral third parties to make a final and binding decision resolving the dispute."). In this sense, the NSA's IDR process can be called "arbitration" and the IDR entities "arbitrators." But arbitration, at least under the FAA, assumes an "agreement" or "contract" to arbitrate. 9 U.S.C. § 2; <u>see</u> <u>Rent-A-Center, W., Inc. v. Jackson</u>, 561 U.S. 63, 67 (2010) ("The FAA reflects the fundamental principle that arbitration is a matter of contract."). The NSA's IDR, on the other hand, is statutorily compelled.

The insurance companies argue that this distinction does not matter as courts have applied the FAA to other statutorily compelled arbitration schemes.

(Doc. 45 at 5 in 3:22-cv-1153). In fact, in a recent case from the District of New Jersey, a court even applied procedural sections of the FAA when analyzing cross motions to vacate and confirm an NSA IDR award. <u>GPS of N.J. M.D., P.C. v. Horizon Blue Cross & Blue Shield</u>, Civ. No. 22-6614, 2023 WL 5815821, at *10 (D.N.J. Sept. 8, 2023). But none of these cases analyzed or decided whether the FAA presumptively applies to new statutorily mandated arbitration schemes.

For example, in <u>GPS of New Jersey M.D.</u>, the parties assumed that 9 U.S.C. § 9 applied to IDR awards, and the court's analysis focused on § 10(a)(3) and (4)—two of the four explicitly incorporated paragraphs. <u>Id.</u> at 3–4. That court simply had no need to grapple with the broader applicability of the FAA to the NSA. Likewise, the insurers' cases, discussing an analogous statutorily mandated arbitration scheme in the Federal Insecticide Fungicide and Rodenticide Act ("FIFRA"), are similarly distinguishable or unpersuasive. <u>See Spray Drift Task Force v. Burlington Bio-Med. Corp.</u>, 429 F. Supp. 2d 49, 50 (D.D.C. 2006) (applying FAA procedural rules in an arguendo analysis of a FIFRA award without explaining why it was applying the FAA rules); <u>Cheminova A/S v. Griffin LLC</u>, 182 F. Supp. 2d 68, 73–74 (D.D.C. 2002) (drawing from already-existing arbitration law to determine the plain meaning of the phrases "binding arbitration proceedings" and "final and conclusive" in FIFRA, but making no determination about the presumptive applicability of

FAA procedural rules); <u>Thomas v. Union Carbide Agric. Prods. Co.</u>, 473 U.S. 568, 590–94 (1985) (discussing the constitutionality of FIFRA arbitration but never mentioning the FAA or its applicability).

Interpretation of statutes is guided by the text. Neither the NSA nor the FAA says that the FAA bears on the NSA outside the four explicitly incorporated paragraphs. The Court will not assume otherwise. The air ambulance companies need not comply with the FAA's form and timing requirements to challenge an IDR award under 42 U.S.C. § 300gg-111(c)(5)(E)(i)(II).[6] But as shown next, the FAA does control judicial review of IDR decisions.

### B.   The scope and standard of review for NSA IDR awards

#### 1.   <u>Judicial review is limited to the grounds available under the FAA</u>

The NSA allows judicial review of IDR decisions as permitted under section 10(a)(1)–(4) of the FAA, meaning IDR awards are reviewable in only four situations:

---

[6] All the same, it is not necessarily true that seeking to vacate an NSA IDR award by motion, as the plaintiff did in <u>GPS of New Jersey M.D.</u>, is <u>improper</u> or that the Court would refuse to entertain such a motion. <u>Cf.</u> <u>GPS of N.J. M.D.</u>, 2023 WL 5815821, at *1; (Doc. 63 at 2–3 in 3:22-cv-1153) (noting that the plaintiff in <u>GPS of New Jersey, M.D.</u> first filed a verified complaint to vacate its IDR award but then treated the verified complaint as if it were a motion). The point is that NSA does not <u>require</u> motion form or impose procedural requirements.

(1)   where the award was procured by corruption, fraud, or undue means;

(2)   where there was evident partiality or corruption in the arbitrators, or either of them;

(3)   where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4)   where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)–(4). Because these paragraphs are directly incorporated from the FAA, the "understood meaning" of their terms is incorporated as well. See Assa'ad v. U.S. Att'y Gen., 332 F.3d 1321, 1329 (11th Cir. 2003) ("When Congress uses language with a well-known legal meaning, [courts] generally presume that it was aware of and intended the statute to incorporate that understood meaning."); see also AIG Baker Sterling Heights, LLC v. Am. Multi-Cinema, Inc., 508 F.3d 995, 1000 (11th Cir. 2007) (applying a plain-language analysis to the FAA).

The "understood meaning" of the incorporated § 10(a) categories is extremely narrow. For example, "undue means" in 9 U.S.C. § 10(a)(1) requires "measures equal in gravity to bribery, corruption, or physical threat to an arbitrator." Floridians for Solar Choice, Inc. v. PCI Consultants, Inc., 314 F. Supp. 3d 1346, 1355 (S.D. Fla. 2018) (quoting Liberty Sec. Corp. v. Fetcho, 114 F. Supp. 2d 1319, 1321 (S.D. Fla. 2000)), aff'd sub nom. Floridians for Solar

Choice, Inc. v. Paparella, 802 F. App'x 519 (11th Cir. 2020). Likewise, even "serious interpretive error" does not rise to the level of "arbitrators exceed[ing] their powers" under § 10(a)(4). Gherardi v. Citigroup Glob. Mkts. Inc., 975 F.3d 1232, 1236–37 (11th Cir. 2020). In other words, an arbitration award will fall under § 10(a) only in "very unusual circumstances." Id. at 1236 (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 942 (1995)).

This is consistent with the prevailing view that "[j]udicial review of arbitration decisions is 'among the narrowest known to the law.'" Id. at 1237 (quoting Bamberger Rosenheim, Ltd. v. OA Dev., Inc., 862 F.3d 1284, 1286 (11th Cir. 2017)). Arbitration, by nature, is an alternative to traditional litigation. Courts thus give both FAA and non-FAA arbitration awards limited and deferential review lest arbitration become "merely a prelude to a more cumbersome and time-consuming judicial review process." Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 588 (2008) (quoting Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 998 (9th Cir. 2003)); see, e.g., United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987) (applying similar restraint to non-FAA awards).[7]

_____

[7] The Court need not simply presume that NSA IDR, because it is a form of arbitration, merits limited review: the very structure of the NSA, as envisioned by Congress, supports taking a deferential approach. As the amicus briefing points out, the NSA gives the implementing executive agencies—not federal courts—the power and responsibility to audit QPAs and investigate complaints. (Doc. 48-1 at 29 in 3:22-cv-1153); 42 U.S.C. § 300gg-

The bottom line is that courts review arbitration awards with deference and restraint, interpreting the § 10(a) categories narrowly. Thus, challenges by either air ambulance companies or insurers to NSA IDR awards may rarely succeed.

### 2.   Misrepresentation of facts to the IDR entity does not expand the scope of judicial review

There is one last provision in the NSA that must be addressed. In the same part of the NSA that provides in subsection (II) for judicial review using FAA standards, there is a subsection (I):

> A determination of a certified IDR entity under subparagraph (A)—
>
> (I)   shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim; and
>
> (II)  shall not be subject to judicial review, except in a case described in any of paragraphs (1) through (4) of section 10(a) of title 9.

---

111(a)(2)(A)–(B). The executive agencies are similarly responsible for auditing IDR entities, ensuring they are properly deciding cases, and revoking certifications when necessary. 45 C.F.R. §§ 149.510(e)(2)(iv), (e)(6)(ii). These nonjudicial remedies for potential procedural and structural IDR problems minimize the need for judicial "supervision."

At the May 16, 2023 hearing, the air ambulance companies suggested that the audits and available administrative remedies have largely fallen short, leaving judicial review as their only recourse. E.g. (Doc. 51 at 23:13–24:21 in 3:22-cv-1153). However, judicial review of IDR awards under 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I)–(II) is not the proper vehicle to challenge the NSA, its regulations, or how it is being administrated by the implementing agencies. Cf. Tex. Med. Ass'n v. U. S. Dep't of Health & Hum. Servs., 587 F. Supp. 3d 528, 533 (E.D. Tex. 2022) (properly entertaining a challenge to the NSA's regulations brought directly against the implementing agency).

42 U.S.C. § 300gg-111(c)(5)(E)(i)(I)–(II) (emphasis added). The air ambulance companies argue that subsection (I) creates another avenue for judicial review for "misrepresentation of facts presented to the IDR entity." E.g., (Doc. 40 at 11–12 in 3:22-cv-1077); see also 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I);. Although subsection (I) admittedly complicates the analysis, there are three reasons why subsection (I) does not create a separate ground for judicial review.

First, subsection (I) provides no information on how to bring an action based solely on misrepresentation of facts to the IDR entity or what the standards would be. In contrast, subsection (II), by incorporating § 10(a) of the FAA and its standards, provides a detailed roadmap to pleading a claim. Second, the apparent subject of subsection (I)—whether an award is "binding upon the parties involved"—does not speak directly to judicial review. Third, subsection (II) is the final word on reviewability. It contains exclusive language—"shall not be subject to judicial review, except"—and lists § 10(a) of the FAA as supplying the only grounds for judicial review. So while the Court does not foreclose that misrepresentation of facts to the IDR entity might support judicial review in a given case, such claims must be asserted within the confines of § 10(a) of the FAA.[8]

---

[8] The apparent, unexplained failure of the insurance companies to timely and accurately provide QPA information to the air ambulance companies and to follow the other dictates of the NSA and its regulations could well have consequences, whether they be through judicial review or administrative action.

**C.    The air ambulance companies fail to state a claim**

Having now established the framework for review under the NSA, the Court turns to the allegations of the Complaints. The air ambulance companies allege that the insurers engaged in concealment and misrepresentation during the IDR process. These claims "sound in fraud," and both air ambulance companies and Kaiser[9] analyze the allegations under Rule 9(b). (Doc. 40 at 20–23 in 3:22-cv-1077); (Doc. 30 at 19–20 in 3:22-cv-1153); (Doc 37 at 8–12 in 3:22-cv-1153); cf. Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1278 (11th Cir. 2006) (requiring Rule 9(b) particularity for non-fraud claims based on the same facts as a fraud claim).

The air ambulance companies generally allege that the insurers failed to make required disclosures and submitted incorrect QPAs to the IDR entity. The air ambulance companies also allege that the IDR entity, C2C, relied upon an illegal presumption in favor of the QPA while adjudicating the parties' claims. (Doc. 1 ¶¶ 27–28, 33–34, 36 in 3:22-cv-1077); (Doc. 1 ¶¶ 26–29, 34, 37 in 3:22-cv-1153) As pled, these allegations are deficient.

---

[9] Unlike Kaiser, Capital Health analyzes Med-Trans' Complaint solely under the standards applicable to motions to vacate and does not alternatively analyze the Complaint under Rule 9(b). See (Doc. 26 at 4, 7 in 3:22-cv-1077).

Although Plaintiffs face an uphill battle, the Court will give the air ambulance companies a chance to amend their Complaints if they can do so consistent with the standards identified in this Order.

## III.   C2C'S MOTIONS TO DISMISS

The air ambulance companies also name the IDR entity, C2C, as a defendant in both cases. (Doc. 1 ¶ 9 in 3:22-cv-1077); (Doc. 1 ¶ 9 in 3:23-cv-1153). C2C moves to dismiss, arguing it is entitled to arbitrator's immunity and that there is no Article III case or controversy between the air ambulance companies and C2C. (Doc. 24 at 4 in 3:22-cv-1077); (Doc. 19 at 4 in 3:22-cv-1153). The United States has filed a statement of interest agreeing with C2C's claim of immunity and further arguing that the NSA does not create a cause of action against IDR entities. (Doc. 58 at 10–11, 17–18 in 3:22-cv-1077). The Court agrees.

The NSA creates a limited right to judicial review of IDR decisions. It does not, however, create a cause of action to sue the IDR entity itself. See 42 § 300gg-111(c)(5)(E)(i). Nothing suggests that IDR entities are proper parties to suit under the NSA, so here the inquiry ends. The Court will grant C2C's motions to dismiss with prejudice.

Accordingly, it is hereby

**ORDERED:**

1)      Defendants Capital Health Plan, Kaiser Foundation Health Plan Inc., and C2C Innovative Solutions, Inc.'s Motions to Dismiss, (Doc. 26 in 3:22-cv-1077); (Doc. 30 in 3:22-cv-1153); (Doc. 24 in 3:22-cv-1077); (Doc. 19 in 3:22-cv-1153) are **GRANTED**.

2)      Plaintiff Med-Trans Corporation's Complaint (Doc. 1 in 3:22-cv-1077) is **DISMISSED without prejudice** as to Defendant Capital Health Plan and **with prejudice** as to Defendant C2C Innovative Solutions, Inc. Plaintiff REACH Air Medical Services LLC's Complaint (Doc. 1 in 3:22-cv-1153) is **DISMISSED without prejudice** as to Defendant Kaiser Foundation Health Plan Inc. and **with prejudice** as to Defendant C2C Innovative Solutions, Inc.[10]

3)      Interested party America's Health Insurance Plans' Motion for Leave to Submit Amicus Curiae Brief (Doc. 48 in 3:22-cv-1153) is **GRANTED**.

4)      No later than **November 30, 2023**, Plaintiffs Med-Trans Corporation and REACH Air Medical Services LLC may file amended complaints. Defendants Capital Health Plan and Kaiser Foundation Health Plan Inc. must respond to the amended complaints no later than **January 10, 2024**. If Defendants move to dismiss, Plaintiffs must respond by **January 31, 2024**.

---

[10] The Court will withhold entry of judgment in favor of C2C until the rest of the case is decided.

5) The parties do not need to file a case management report at this time.

**DONE AND ORDERED** in Jacksonville, Florida the 1st day of November, 2023.



TIMOTHY J. CORRIGAN
United States District Judge

rmv
Copies to:
Counsel of record